A90A0908. SECURITY TRUST FEDERAL SAVINGS & LOAN ASSOCIATION v. GILL SAVINGS ASSOCIATION et al.
(398 SE2d 382)

McMURRAY, Presiding Judge.

On January 11, 1985, Commerce Federal Savings Bank (appellant Security Trust Federal Savings & Loan Association's predecessor), hereinafter referred to as "Commerce," loaned a borrower (which ultimately became known as Sun Oaks, Ltd.) referred to hereinafter as "borrower," $1,000,000 to acquire and develop certain property. Commerce obtained a deed to secure debt covering the property from the borrower. Subsequently, on December 20, 1985, Commerce entered into a conversion agreement with the borrower to convert the acquisition and development loan to a five-year loan. In pertinent part, the conversion agreement provided as follows:

"8. *Subordination*. It is further acknowledged and understood by the parties hereto that [Commerce] has agreed to subordinate the aforesaid Deed to Secure Debt held by [Commerce] to the lien of a certain other security deed or security deeds, securing payment of a construction and/or permanent loan or loans with regard to [the property]. [Commerce's] said agreement to subordinate its Deed to Secure Debt is hereby modified to provide that [Commerce] shall be obligated to do so only for so long as the total outstanding indebtedness owing to all lenders (including principal, interest and all other charges due or to become due), payment of which is secured by liens or security deeds upon the subject real property hereinbefore described, does not exceed ninety-five percent (95%) of the then-current appraised value of said real property; provided, however, that in no event shall [Commerce] be required to subordinate its Deed to Secure Debt to any indebtedness having a principal amount in excess of

the lesser of (i) $6,730,000.00 or (ii) eighty-three percent (83%) of the then-current combined appraised value of the aforesaid real property and all improvements then located thereon. Should the aggregate of all loans secured by liens or security deeds on the subject real property at any time exceed ninety-five percent (95%) of the then-current appraised value of said real property, then and in that event, upon demand by [Commerce], Borrower shall immediately pay over to [Commerce], to be applied to payment of the then-outstanding principal balance of the [loan], an amount sufficient to reduce the aggregate of all such loans to an amount less than ninety-five percent (95%) of the then-appraised value of the subject land and improvements. [Commerce] or Borrower shall have the right, at any time and from time to time, at Borrower's expense, to have the aforesaid real property reappraised by a qualified appraiser reasonably acceptable to [Commerce] and Borrower in order to determine whether the aforesaid eighty-three percent (83%) and/or ninety-five percent (95%) limitations are being violated. . . .

"11. *Subordination fee.* It is understood and agreed that . . . upon subordination of [Commerce's] Deed to Secure Debt, Borrower [will] pay to [Commerce], in cash, a subordination fee in the amount of Seventy Thousand and No/100 ($70,000.00) Dollars, as consideration to [Commerce] for its subordination of its Deed to Secure Debt, which subordination fee shall be deemed fully earned by [Commerce] as of the date of such subordination and shall be non-refundable, in whole or in part."

Thereafter, on December 30, 1985, Gill Savings Association ("Gill") loaned $6,730,000 to the borrower for the construction of apartments on the property. At the same time, Gill entered into a subordination agreement with Commerce. In pertinent part, it recited:

"WHEREAS, pursuant and subject to the terms and provisions of a certain Agreement for Conversion of Acquisition and Development Loan (the 'Conversion Agreement'), dated December 20, 1985, Commerce has agreed to subordinate the lien of the Commerce Deed to Secure Debt to the lien or liens of the deed or deeds to secure debt to be taken by Gill . . . and

"WHEREAS, pursuant to the provisions of the aforesaid Conversion Agreement, Commerce now desires to make and enter into this Agreement will Gill; and

"WHEREAS, in consideration of the benefits to be conferred upon the Project and the benefits to thus be indirectly realized by Gill as a result of the execution by Commerce of the Conversion Agreement, Gill likewise desires to make and enter into this Agreement;

"NOW, THEREFORE, for and in consideration of the mutual

benefits to be derived herefrom and for other good and valuable considerations . . . the parties hereto do hereby agree as follows:

"1. The recitals hereinbefore set forth are incorporated herein by reference and made a part hereof as fully as though repeated herein verbatim.

"2. Commerce hereby subordinates the lien of the Commerce Deed to Secure Debt to the lien or liens of the Gill Deeds to Secure Debt.

"3. For and in consideration of the subordination by Commerce of the lien of the Commerce Deed to Secure Debt to the lien of the Gill Deeds to Secure Debt . . . Gill hereby agrees with Commerce that . . . in the event of any default under [Gill's loans to borrower] . . . Gill shall refrain from taking any action against Borrower . . . unless and until Gill shall have first given to Commerce at least ten (10) days' prior written notice of any such default which shall be monetary in nature and/or thirty (30) days' prior written notice of any such default which shall be non-monetary in nature, during which respective periods, Commerce shall have full right, power and authority (but not the obligation) to cure any such default. . . ."

When the borrower defaulted on the loans of both Commerce and Gill, the lenders foreclosed. Each lender claimed its deed to secure debt was in a priority position.

Following a hearing, the trial court enjoined each foreclosure proceeding and, thereafter, the actions were consolidated. The parties agreed that Gill would take over the property and that, in the event Commerce prevailed at trial, it would take a monetary judgment for the debt secured by its deed to secure debt.

The case was tried by the court sitting without a jury. The parties stipulated that the debt to value ratios set out in the conversion agreement were not exceeded at the time Commerce subordinated its loan but that the ratios were exceeded at the time the parties foreclosed.

The only issue to be decided by the trial court was whether the subordination of Commerce's deed to secure debt was conditional or unconditional. The trial court determined that the subordination agreement was ambiguous inasmuch as its unconditional language was in conflict with the conditional language set forth in the conversion agreement. Looking to the circumstances surrounding the transaction and the testimony of various witnesses, the trial court concluded that the parties intended to make the subordination agreement unconditional and Security Trust Federal Savings & Loan Association appeals. *Held*:

We agree with the trial court that the subordination agreement is unconditional. We reach our conclusion, however, upon different reasoning.

In our view, the subordination agreement stands alone. Although it refers to the conversion agreement in the recitals, the reference simply explains Commerce's willingness to subordinate its deed to secure debt. Having promised the borrower that it would subordinate its deed to secure debt if certain conditions were present, Commerce, acting "pursuant and subject to" the conversion agreement, was fulfilling its obligation in that regard.

Significantly, the subordination agreement does not at any point incorporate the *terms* of the conversion agreement. We do not construe the incorporation of the *recitals* (in Paragraph 1 of the subordination agreement) as an incorporation of the conversion agreement itself.

Thus, we find no ambiguity in the subordination agreement. The subordination agreement provides for the subordination of Commerce's deed to secure debt. It does no more.

" 'Where a written contract is plain and unambiguous, it is the only evidence of what the parties intended and understood by it.' [Cits.]" *Rauschenberg v. Peeples*, 30 Ga. App. 384 (2) (118 SE 409). That Commerce may have entered into a contract with the borrower for a conditional subordination does not change the fact that, when it contracted with Gill, Commerce intended to subordinate its deed to secure debt unconditionally.

*Judgment affirmed. Carley, C. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 27, 1990 —
REHEARING DENIED OCTOBER 12, 1990 —

*Alston & Bird, Ben F. Johnson III, Donna P. Bergeson*, for appellant.

*Bondurant, Mixson & Elmore, M. Jerome Elmore, Dirk G. Christensen*, for appellees.